Present:  All the Justices

JOHN P. CATTANO, ET AL.
                                        OPINION BY
v.  Record No. 110692          JUSTICE LEROY F. MILLETTE, JR.
                                        April 20, 2012
CAROLINE D. BRAGG

              FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                   William R. Shelton, Judge Designate

     In this appeal, we address the standing of a dissenting

minority shareholder bringing a derivative suit under Code

§ 13.1-672.1 against the majority shareholder of a two-

shareholder corporation while simultaneously seeking the

judicial dissolution of the corporation.  We also address the

award of attorneys' fees and costs to the minority shareholder.

                          I.  Background

     This case arises out of a dispute between two attorneys,

John Cattano and Caroline Bragg, the only shareholders of

Cattano Law Firm, P.C. ("the Firm").  In October 2008, after

discovering that checks were written from the Firm's

escrow/trust account to Cattano's wife and children, Bragg

wrote Cattano a letter requesting that all corporate records be

made available for inspection.  Cattano responded with a letter

terminating Bragg's employment.  Cattano then called a special

meeting of the shareholders (himself and Bragg) to remove Bragg

as director.  Bragg attended the meeting and objected.  Cattano

allegedly counted only his own vote at the shareholder meeting

and continued to refuse to produce corporate documents, at which point Bragg filed suit.

Bragg's original complaint was filed solely in an individual capacity, seeking judicial dissolution, accounting of assets, and division of assets. She later filed an amended complaint adding derivative actions. Her amended complaint included the following claims: a writ of mandamus for the copying and inspection of corporate records pursuant to Code §§ 13.1-773 and -773.1 (Count I, filed individually); breach of fiduciary duty (Count II, filed derivatively); conversion (Count III, filed derivatively); breach of contract (Count IV, filed individually); and judicial dissolution (Count V, filed individually).

Cattano filed a demurrer, arguing, inter alia, that Bragg had no standing to file a derivative claim because she did not fairly and adequately represent the interests of the corporation as required by Code § 13.1-672.1(A)(4). The demurrer was overruled. The standing argument was raised again in a motion to strike, which the court also overruled.

The circuit court appointed a receiver pursuant to Code § 13.1-748, directing the receiver to perform a complete accounting of books and records of the Firm, including but not limited to the disposition of all payments, "the disposition of approximately $234,000 representing fees payable to the Firm

from a certain personal injury settlement (the 'Baker Fees'),"
and a valuation of the assets of the Firm.[1]  Pursuant to a court
order, Cattano produced corporate financial documents to the
receiver for review.  The receiver testified before the jury
that he did question the validity of some of Cattano's expenses
and reimbursements, such as gift cards from retail stores and
his wife's cell phone bill, and noted that it was unusual to
see an attorney take disbursements from the client trust
account.  The receiver ultimately opined that there did not
appear to be widespread criminal conduct or elaborate fraud,
but an ultimate evaluation of which expenses were proper
depended on the legal agreement between the parties and how
profits were shared, which was in dispute.

Cattano and the Firm requested a jury trial, and the
circuit court bifurcated the issue of attorneys' fees.  Count
I, seeking a writ of mandamus, was ultimately not sent to the
jury as the court concluded that "the effect of the mandamus
has been accomplished [via the production of documents to the

---

[1] Although the circuit court was statutorily authorized to
grant the receiver the power to bring suit on behalf of the
Firm to garner its assets, the court declined to do so in this
instance.  Because the order designating the powers of the
receiver simultaneously directed the Clerk to file the amended
complaint containing claims that placed the ownership and
division of assets in front of a jury, and all necessary
parties were already joined, the amended complaint was a
sufficient alternative mechanism to allocate assets without
authorizing additional suits by the receiver.

receiver]." The verdict included a factual finding that Bragg owned 27.35% of the Firm.

In addition, the jury found in Bragg's favor on Count III (derivative conversion), awarding the Firm $234,412.18, the exact amount of the Baker Fees. Of this amount, the jury specified that 27.35%, or $64,111.77, should go to Bragg. The jury also awarded Bragg $10,416.66 individually on the breach of contract claim and $7,409.90 on the judicial dissolution claim. The jury did not find in Bragg's favor on the allegation of breach of fiduciary duty.

The issue of attorneys' fees was handled in a bench trial. Cattano, who had interpreted the circuit court's refusal to submit Count I to the jury as a grant of the defense's motion to strike on the basis that the claim was moot, argued that Bragg was not entitled to attorneys' fees on the writ of mandamus. Cattano also argued that Bragg had failed to state with particularity the reasons for her request to review corporate records in her letter pursuant to Code § 13.1-771, and thus could not recover fees under Code § 13.1-773(C). Finally, Cattano argued that Bragg was not entitled to recover fees under the derivative claim of conversion (Count III) because she had rendered no substantial benefit to the corporation as required by Code § 13.1-672.5(1).

4

In its final judgment order, however, the circuit court concluded that Count I had been resolved in favor of Bragg and that the conversion claim had yielded a substantial benefit to the corporation. Accordingly, the circuit court awarded what it determined to be reasonable fees to Bragg in the amount of $269,813, plus costs and expenses of $19,415.71.

Cattano now raises five assignments of error: (1) whether the circuit court erred in failing to strike Bragg's derivative claim for failure to fairly and adequately represent the interests of the corporation; (2) whether the circuit court erred in failing to instruct the jury on the issue of fair and adequate representation; (3) whether the circuit court erred in assigning attorneys' fees on the writ of mandamus count; (4) whether the circuit court erred in concluding that the proceeding substantially benefitted the corporation; and (5) whether the circuit court abused its discretion in its award of attorneys' fees. For the reasons stated herein, we conclude that there was no error in the judgment of the circuit court, and will affirm.

## II. Discussion

### A. Fair and Adequate Representation in Derivative Claims

Cattano raises the threshold issue of whether the circuit court erred in failing to strike Bragg's derivative claims on the ground that she lacked standing under Code § 13.1-672.1(A).

5

This section states that "[a] shareholder shall not commence or maintain" a derivative proceeding unless the shareholder was a shareholder at the time of the act complained of and "[f]airly and adequately represents the interests of the corporation in enforcing the right of the corporation." Id. As a mixed question of fact and law, we review the issue de novo, with deference to any findings of fact made by the circuit court. Mulford v. Walnut Hill Farm Group, 282 Va. 98, 106, 712 S.E.2d 468, 473 (2011).

Cattano first argues that derivative actions are designed to prevent a multiplicity of suits from a class and thus are not appropriate when only a single shareholder supports the claim. Our precedent is not consistent with such a restriction. In Simmons v. Miller, 261 Va. 561, 573, 576, 544 S.E.2d 666, 674-75 (2001), we noted that "[t]he overwhelming majority rule is that an action for injuries to a corporation cannot be maintained by a shareholder on an individual basis and must be brought derivatively," and we "decline[d] to adopt a closely held corporation exception to the rule requiring that suits for breach of fiduciary duty against officers and directors must be brought derivatively on behalf of the corporation and not as individual shareholder claims."

Other jurisdictions have acknowledged instances where the "class" of shareholders represented in a derivative action may

6

consist of only one person.[2] See, e.g., Larson v. Dumke, 900 F.2d 1363, 1368-69 (9th Cir. 1990); Jordon v. Bowman Apple Products Co., Inc., 728 F. Supp. 409, 412-13 (W.D. Va. 1990); Halsted Video, Inc., v. Guttillo, 115 F.R.D. 177, 179-80 (N.D. Ill. 1987) (finding a "legitimate class of one" where there was no indication plaintiff was operating under "ulterior motives" or would "not adequately enforce" the company's rights); Brandon v. Brandon Construction Co., Inc., 776 S.W.2d 349, 353-54 (Ark. 1989); Hall v. Tennessee Dressed Beef Co., 957 S.W.2d 536, 540 (Tenn. 1997) (holding that, given no evidence to support a finding that the plaintiff was unable to fairly represent the interests of the corporation while maintaining his individual suit, the existence of both was not a per se bar to standing); Eye Site, Inc. v. Blackburn, 796 S.W.2d 160, 161-63 (Tex. 1990). Cf. Smith v. Ayres, 977 F.2d 946, 948 (5th Cir. 1992) ("Only in the rarest instances may there be a shareholder derivative action with a class of one."). Instances of a two-shareholder corporation may be precisely the sort of rare instance suggested in Ayres.

---

[2] The language of Federal Rule of Civil Procedure 23.1 requires that the plaintiff fairly and adequately represent the interests of the "shareholders or members who are similarly situated," as opposed to the interests of the "corporation." We have previously noted the linguistic distinction but found the Virginia statute to be "substantially similar." Jennings v. Kay Jennings Family Ltd. P'ship, 275 Va. 594, 601 & n.3, 659 S.E.2d 283, 288 & n.3 (2008).

Cattano next argues that, under the factors adopted by this Court in Jennings v. Kay Jennings Family Limited Partnership, 275 Va. 594, 659 S.E.2d 283 (2008), Bragg cannot fairly and adequately represent the Firm. In Jennings, we held that the widely accepted Davis factors were the primary relevant considerations in evaluating whether a person meets the standard for fair and adequate representation:

> (1) economic antagonisms between the representative and members of the class; (2) the remedy sought by the plaintiff in the derivative action; (3) indications that the named plaintiff is not the driving force behind the litigation; (4) plaintiff's unfamiliarity with the litigation; (5) other litigation pending between the plaintiff and defendants; (6) the relative magnitude of plaintiff's personal interests as compared to his interests in the derivative action itself; (7) plaintiff's vindictiveness toward the defendants; and (8) the degree of support plaintiff is receiving from the shareholders he purports to represent.

Id. at 601-02, 659 S.E.2d at 288 (citing Davis v. Comed, Inc., 619 F.2d 588, 593-94 (6th Cir. 1980)).[3] We observed that these factors "are not exclusive and must be considered in the totality of the circumstances found in each case." Id. at 602, 659 S.E.2d at 288. We further explained:

---

[3] Jennings involved a limited partnership, and we have not yet had the opportunity to apply the Jennings factors to a corporate derivative claim in Virginia. Yet the Davis case itself, from which we explicitly adopted the Jennings factors, concerned a corporate derivative action. Davis, 619 F.2d at 589. We therefore apply the same analysis to corporate derivative claims in the Commonwealth.

8

> [I]t is frequently a combination of factors which leads a court to conclude that the plaintiff does not [have standing] (although often a strong showing of one way in which the plaintiff's interests are actually inimical to those he is supposed to represent . . . will suffice in reaching such a conclusion).

Id. (quoting Davis, 619 F.2d at 593).

While the present case contains economic antagonism as well as apparent animosity between the Firm's only two shareholders, we do not find this to be a determinative factor when evaluating a closely held corporation; nor do we find it determinative that the sole other shareholder does not support the derivative suit. To so hold would be to enact a de facto bar on derivative suits in two-shareholder corporations. Charged emotions and economic antagonism are virtually endemic to disputes in closely held corporations. Nevertheless, a single shareholder derivative claim is still possible, provided that the totality of the circumstances support a finding that the plaintiff's personal interests do not preclude the shareholder from fairly and adequately representing the corporation. See, e.g., Hall, 957 S.W.2d at 540. In closely held corporations, we must look beyond the mere presence of economic and emotional conflict, placing more emphasis on whether the totality of the circumstances suggest that the plaintiff will vigorously pursue the suit and that the remedy sought is in the interest of the corporation.

We hold that, applying the Jennings factors to the specific facts of this case, the "totality of the circumstances" combine to show that Bragg "[f]airly and adequately represent[ed] the interests of the corporation" as required under Code § 13.1-672.1(A). The remedy sought – the return of funds, misappropriated by an officer, to the corporation – is highly appropriate for a derivative claim. There is no evidence in the record of external parties motivating Bragg, and she is intimately familiar with the litigation. Bragg's additional individual claims – breach of contract and judicial dissolution – do not reflect an inappropriate conflict of interest. Significantly, as a portion of the funds returned would go to her upon dissolution, Bragg's personal interests are in line with those of the corporation, so that the return of assets to the Firm will clearly be vigorously litigated.

Cattano argues that Bragg is acting solely in her own interest because a derivative claim offers her the possibility of an award of attorneys' fees and costs, whereas mere judicial dissolution, which could provide the same remedy, provides no such fee-shifting mechanism. See Gianotti v. Hamway, 239 Va. 14, 29, 387 S.E.2d 725, 734 (1990) (affirming the circuit court's judgment ordering directors to restore funds owed to the corporation at the dissolution stage but refusing to award

10

plaintiff minority shareholders attorneys' fees and expenses). Yet the additional advantage of providing a limited fee-shifting mechanism in derivative claims is a deliberate policy choice on the part of the General Assembly, not a reason to bar the claim. See Code § 13.1-672.5(1). The Supreme Court of the United States explained in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-92, 396-97 (1970), that recovery of attorneys' fees in a derivative action is a mechanism to prevent unjust enrichment when a substantial benefit has inured to the shareholders of a corporation. Bragg sought to recover misappropriated funds, an appropriate objective of a derivative action.

Cattano also argues that Bragg cannot simultaneously act in the Firm's interest and seek to dissolve it. This proposition ignores the fact that, in the circumstances presented in this case, the Firm's dissolution was essentially commenced by Cattano in firing Bragg, and the dissolution was, by the time the suit was brought, decidedly mutual. Bragg was not seeking to terminate an otherwise functional corporation. The corporation ceased to operate years ago.

Whether winding up or not, it is clearly in the interest of the corporation to have misappropriated funds returned, and the verdict returned tangible assets to the Firm. Judicial dissolution is a remedial mechanism that exists in addition to,

11

rather than as a substitute for, shareholders rights.  Baylor
v. Beverly Book Co., 216 Va. 22, 24, 216 S.E.2d 18, 19 (1975).
It therefore cannot act as a per se bar to a derivative claim.

Given the totality of the circumstances, we conclude that
the circuit court did not err in failing to strike the
derivative claim under Code § 13.1-672.1(A).

### B.  Jury Instructions

Cattano next argues that the circuit court erred in
failing to place the issue of standing in front of a jury.
This Court has never held that an issue of standing must be
placed before a jury, and we do not rule on the issue now.  It
is sufficient to say that, as a predicate for submission to a
jury, a proffered instruction must concern in some way a
factual dispute appropriately adjudicated by the factfinder.
See Etheridge v. Medical Center Hospitals, 237 Va. 87, 96, 376
S.E.2d 525, 529 (1989) ("The resolution of disputed facts
continues to be a jury's sole function.  The province of the
jury is to settle questions of fact, and when the facts are
ascertained the law determines the rights of the parties."
(internal quotation marks omitted)).  In the case at bar, there
were no disputed facts regarding the issue of fair and adequate
representation, and the circuit court's refusal to instruct the
jury on that issue was appropriate.

As previously stated, the issue of fair and adequate representation is a mixed question of fact and law. In this case, all facts relevant to the Jennings factors, which represent the legal standard, were undisputed. Both parties acknowledged their economic antagonism. Neither disputed the remedy sought. The defendant did not allege that a third party was the driving force behind the litigation or that Bragg was unfamiliar with the litigation. The only pending litigation was before the trial court at that time. Both parties recognized that Bragg had a direct personal interest in recovering funds due to the judicial dissolution, and that she stood to benefit from attorneys' fees accompanying a derivative claim. Both parties testified to a relationship that began well but had soured, and it was clear that Cattano did not support Bragg in the derivative suit.

As a result, the judge needed only to apply the law to the undisputed facts. No finding of fact was required as to this issue. We therefore hold that the circuit court did not err in refusing to send the question of fair and adequate representation to the jury.

### C. Relief and Attorneys' Fees under Count I: Writ of Mandamus for the Inspection of Corporate Records Pursuant to Code §§ 13.1-773 and -773.1.

Cattano assigns error to the circuit court's award of relief and attorneys' fees pursuant to Code § 13.1-773, which

13

affords redress for a corporation's failure to permit a shareholder to inspect documents in accordance with Code § 13.1-771.  Cattano alleges that he had reasonable grounds for denying Bragg access to the documents because Bragg failed to comply with the statutory requirements of Code § 13.1-771(D),[4] which provides that "[a] shareholder may inspect and copy the records identified in subsection C only if:  . . . [t]he shareholder describes with reasonable particularity the shareholder's purpose."

Count I, as articulated in Bragg's first amended complaint, repeatedly invoked not only Code § 13.1-773, but also Code § 13.1-773.1, which states:

> A.   A director of a corporation is entitled to inspect and copy the books, records and documents of the corporation at any reasonable time to the extent reasonably related to the performance of the director's duties as a director, including duties as a member of a committee, but not for any other purpose in any manner that would violate any duty to the corporation.
>
> B.   The circuit court . . . may order inspection and copying of the books, records and documents upon application of a director who has been refused such inspection rights, unless the corporation establishes that the director is not entitled to such inspection rights.

---

[4] At the time of trial, the language currently set out in subsection (D) of Code § 13.1-771 was contained in subsection (C) of the statute.  The amendment by 2010 Acts ch.782 rewrote the statute, in part by redesignating former subsection (C) as current subsection (D) and updating the reference in that subsection to "records identified in subsection B" to read "records identified in subsection C."  The 2010 amendments have no other impact on this appeal.

The court shall dispose of an application under this subsection on an expedited basis.

C.    If an order is issued, the court may . . . order the corporation to reimburse the director's reasonable costs, including reasonable counsel fees, incurred in connection with the application if the director proves that the corporation refused inspection without a reasonable basis for doubt about the director's right to inspect the records demanded.

Although Cattano originally denied that Bragg was a director of the corporation, Bragg was explicitly found by the circuit court in its final order to be a director of the corporation, a finding acknowledged by Cattano's own admission. Accordingly, Bragg had the authority as a director to review documents under Code § 13.1-773.1, which does not have a reasonable particularity requirement.  As there was a sufficient alternative ground for the circuit court's award based on its unchallenged factual finding, regardless of whether Bragg articulated the reasons for her request, the circuit court did not err in awarding fees to redress the corporation's refusal to permit her to inspect documents.

D.   Substantial Benefit Doctrine

Cattano additionally argues that the circuit court erred in concluding that Bragg rendered a substantial benefit to the firm.  This mixed question of fact and law is reviewed de novo, with deference to the factual findings of the circuit court. Mulford, 282 Va. at 106, 712 S.E.2d at 473.

15

Code § 13.1-672.5(1) provides that:

On termination of a derivative proceeding, the court shall:

1. Order the corporation to pay the plaintiff's reasonable expenses (including counsel fees) incurred in the proceeding if it finds that the proceeding has resulted in a substantial benefit to the corporation . . . .

No Virginia court has had occasion to interpret the relevant portion of this Code section. The key term "substantial benefit," however, was invoked and interpreted by the Supreme Court of the United States:

"[A] substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest."

Mills, 396 U.S. at 396 (alteration in original)(quoting with approval Bosch v. Meeker Cooperative Light & Power Ass'n, 101 N.W.2d 423, 426-27 (Minn. 1960)).

Bragg successfully brought a derivative suit for conversion against a director of the Firm, resulting in a jury award returning over $234,000 to the Firm. Based on this outcome, the circuit court concluded that a substantial benefit was conveyed to the Firm. Particularly in light of the fact that this made up approximately one quarter of the Firm's annual gross income, this was a reasonable conclusion. We therefore conclude that the circuit court did not err in

16

finding that Bragg rendered a substantial benefit to the corporation.

## E. Abuse of Discretion

Finally, Cattano argues that the circuit court abused its discretion in its award of $289,228.71 in attorneys' fees and costs, which included fees and costs associated with the receiver and the derivative suit. The record shows that the circuit court reviewed an extensive accounting of fees and costs. In its final order, the circuit court explicitly evaluated the rates paid to experts and lead counsel in this case and found them to be reasonable "in this particular case." We see no reason for this Court to substitute its judgment for that of the circuit court that oversaw these complicated proceedings, which commenced in 2008 and did not see a final judgment order until 2011. We therefore hold that the circuit court did not abuse its discretion.

## III. Conclusion

For the aforementioned reasons, we will affirm the judgment of the circuit court.

Affirmed.

JUSTICE McCLANAHAN, dissenting.

I dissent from the opinion of the Court because I do not believe Bragg had standing to pursue the derivative claims on

17

behalf of the corporation pursuant to Code § 13.1-672.1, nor do I believe she was entitled to attorneys' fees and costs under Code § 13.1-773.1(C).

## I.   Standing Under Code § 13.1-672.1

Considering the "totality of the circumstances found in [this] case," Jennings v. Kay Jennings Family Ltd. P'ship, 275 Va. 594, 602, 659 S.E.2d 283, 288 (2008), I cannot agree that Bragg could "[f]airly and adequately represent[] the interests of the corporation in enforcing the right of the corporation." Code § 13.1-672.1(A)(4).[*]  Because Bragg was seeking to recover damages for breach of contract against the Firm as well as seeking judicial dissolution of the Firm, her interests were antagonistic to the interests of the Firm.  In Count IV of her

---

[*] Since the Firm consisted of only two shareholders, not all of the factors discussed in Jennings are relevant, such as whether Bragg is the driving force behind and familiar with the litigation. Furthermore, "the degree of support [Bragg] is receiving from the shareholders [she] purports to represent" should not be determinative in this case since Cattano was the only other shareholder. Jennings, 275 Va. at 602, 659 S.E.2d at 288.  As the majority correctly observes, placing too much emphasis on this factor would hinder the ability of a shareholder to bring a derivative suit on behalf of the corporation in two-shareholder corporations.  Rather, as we recognized in Jennings, we should focus on the factors that bear on whether "the plaintiff's interests are actually inimical to those [she] is supposed to represent." Id. (internal quotation marks and citation omitted).  Thus, while I agree the factors discussed in Jennings should not be applied so as to preclude a shareholder in a closely held corporation from pursuing a derivative claim on behalf of the corporation, by the same token, the plaintiff shareholder's antagonistic interests should not be ignored simply because the corporation only consists of two shareholders.

amended complaint, Bragg alleged that the Firm and Cattano breached their agreement with her in failing to pay Bragg her monthly draw after she requested copies of the corporate books. In Count V, Bragg asked the court to judicially dissolve the Firm and enjoin both the Firm and Cattano from disbursing the Baker Fees or paying any money to Cattano in excess of his monthly draws. In my opinion, Bragg could not fairly and adequately represent the interests of the Firm while simultaneously pursuing her individual breach of contract claim against the Firm and termination of the Firm's existence since her interests were "actually inimical" to the Firm's interests. Jennings, 275 Va. at 602, 659 S.E.2d at 288.

In fact, the addition of Bragg's derivative claims did not advance the interests of the Firm but provided a benefit to her alone. When Bragg filed her initial complaint, she sought judicial dissolution of the Firm under Code § 13.1-747(A)(1)(b), providing for dissolution when "[t]he directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent," and Code § 13.1-747(A)(1)(d), providing for dissolution when "[t]he corporate assets are being misapplied or wasted." Bragg asserted that Cattano's "waste, self-dealing, self-interest and breach of fiduciary duty" caused the Firm's assets "to be looted, misapplied and wasted." Bragg

requested that the court "enjoin and restrain Cattano, pursuant to Virginia Code § 13.1-747(E), from further self-dealing and committing waste," and appoint "a receiver, pursuant to Virginia Code § 13.1-748, to perform an accounting and determine the amounts improperly paid by Cattano to himself and his adult children and the amounts properly due Bragg." Her complaint specifically included an accounting of the Baker Fees. Additionally, Bragg asked that the receiver be empowered to sue and recover all payments improperly made to Cattano and his children.

In amending her complaint to add the derivative claims to the already pending claim for judicial dissolution, Bragg simply reiterated her request for determination and recovery of funds or assets improperly misappropriated by Cattano, including the Baker Fees. In Count II of her amended complaint, Bragg alleged Cattano breached his fiduciary duties to the firm by misappropriating the Baker Fees and other assets. In Count III of her amended complaint, Bragg alleged Cattano improperly exercised or assumed control over the Baker Fees and other assets of the Firm. Thus, Bragg added the derivative claims for breach of fiduciary duty and conversion despite the fact that she was already seeking the same determinations and relief in her claim for judicial dissolution. Her derivative claims served no purpose except to

provide a mechanism for recovery of attorneys' fees and costs not available under her claim for judicial dissolution and appointment of the receiver.  See Gianotti v. Hamway, 239 Va. 14, 29, 387 S.E.2d 725, 734 (1990) (attorneys' fees and costs not authorized under dissolution statute) (decided under former Code § 13.1-94, now in substance, § 13.1-747)).  In pursuing these claims, Bragg was not representing the interests of the Firm, but rather her own personal interest in obtaining attorneys' fees and costs.

In sum, when considering "the remedy sought by [Bragg] in the derivative action," "other litigation pending between [Bragg] and defendants," and "the relative magnitude of [Bragg's] personal interests as compared to [her] interests in the derivative action itself," I am of the opinion that Bragg does not satisfy "the representational requirements" of Code § 13.1-672.1(A).  Jennings, 275 Va. at 601-02, 659 S.E.2d at 288.  Therefore, I would hold the circuit court erred in failing to strike the derivative claims based on Bragg's lack of standing.  Accordingly, I would reverse the judgment rendered under Count III of Bragg's amended complaint and the award of attorneys' fees and costs attributable to this claim.

II.  Attorneys' Fees and Costs under Code § 13.1-773.1

I would further hold the circuit court erred in awarding attorneys' fees and costs attributable to Bragg's claim in

Count I seeking a writ of mandamus for the inspection and copying of corporate records.

Although in her amended complaint, Bragg set forth a claim under Code §§ 13.1-773 and -773.1 asking the court to "enter an [o]rder on an expedited basis" permitting Bragg to inspect and copy the Firm's corporate records, Bragg did not pursue this claim, and the circuit court did not enter such an order. Shortly after Bragg filed her initial complaint, she moved for appointment of a receiver pursuant to Code § 13.1-748 to perform an accounting to determine amounts improperly paid by Cattano to himself and his children as well as amounts properly due to Bragg for the reasons set forth in her complaint. At the hearing in which the court considered Bragg's motion for leave to file an amended complaint, the court granted Bragg's motion for appointment of a receiver. The court entered an order requiring Cattano and the Firm to provide the receiver with access to the financial data and records for the purposes of performing his accounting. The order also directed counsel to meet and confer to resolve defendants' specific objections to discovery requests propounded after the initial complaint was filed. The order appointing the receiver, requiring access by the receiver to corporate records, and directing counsel to meet and resolve discovery disputes was entered in response to Bragg's motion for a preliminary injunction and to compel

discovery filed before Bragg moved to amend her complaint to add the statutory claim for inspection and copying.  And after the amended complaint was filed adding the statutory claim for inspection and copying, Bragg did not seek to obtain an order under either Code §§ 13.1-773 or -773.1.

While the majority states that Code §§ 13.1-773 and -773.1 afford redress for a corporation's failure to permit a shareholder or director to inspect documents, those statutes only permit an award of attorneys' fees and costs if an order is entered pursuant to one of those statutes.  See Code §§ 13.1-773(C) and -773.1(C).  Because no such order was entered, or even pursued, there was no basis for an award of attorneys' fees and costs under either statute.  Therefore, I would reverse the circuit court's judgment awarding attorneys' fees and costs attributable to the claim under Count I.